UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION - LONDON

---

MELISSA CARMICLE,

                Plaintiff,                      Civil Action No.:

    vs.

                                      **COMPLAINT**

K2D, INC., a Colorado Corporation
DBA Colorado Premium Foods,          **JURY TRIAL DEMANDED**

                    Defendant.

---

COMES NOW the Plaintiff Melissa Carmicle who states and alleges as follows:

1.      This case arises out of a multistate outbreak of *E. coli* O103 occurring in March and April of 2019, across 10 states, including the State of Kentucky.

2.      This outbreak has been epidemiologically and microbiologically linked to ground beef produced by Defendant K2D, Inc. and sold under the trade name Colorado Premium Foods.

**Parties, Jurisdiction, and Venue**

3.      Plaintiff Melissa Carmicle ("Ms. Carmicle") is a resident of Laurel County, Kentucky.

4.      Defendant K2D, Inc. is a Colorado corporation with headquarters in Greeley, Colorado.

5.      Defendant Colorado Premium Foods's registered agent for service is Kevin LaFleur. The registered agent's street address is 2035 2nd Avenue, Greeley, Colorado 80631.

1

6.      Defendant K2D, Inc. operates a manufacturing facility located at 62 Adamson Industrial Boulevard in Carrollton, Georgia 30117.

7.      Defendant K2D, Inc. is a food manufacturer doing business under the name Colorado Premium Foods (hereinafter referred to as "Colorado Premium Foods.")

8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(c) because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and because there is complete diversity of citizenship between the Plaintiff and Defendant.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and omissions giving rise to the claims asserted occurred in this district.

10.     Defendant maintains substantial contact in Kentucky, including transacting business in Kentucky, such that this court has personal jurisdiction over the Defendant.

## *E. coli* and Ground Beef Products

11.     *E. coli* O103 is a bacterial pathogen that causes illness in humans. Like *E. coli* O157:H7, *E. coli* O103 is a Shiga-toxin producing serogroup, or strain, of *E. coli.* Collectively, the serogroups of *E. coli* that produce these toxins are known as "STEC"—Shiga-toxin producing *E. coli*.

12.     Though these types of *E. coli* can cause severe illness in humans, STEC live, grow, and reproduce in the digestive tract of ruminant animals, like cattle.

13.     The Food Safety and Inspection Service (FSIS) of the United States Department of Agriculture (UDSA) is tasked with regulating and inspecting establishments that produce meat products in interstate commerce, including beef.

14.     Since the 1990s, FSIS has considered *E. coli* O157:H7 to be an "adulterant" in non-intact beef, including ground beef. However, according to FSIS, non-O157:H7 STEC serogroups like O103 are also known to be extremely virulent—with infections resulting from <10 cells—and may even survive typical cooking temperatures.

15.     In 2011, FSIS issued a final determination and request for comment that identified *E. coli* O103 and other non-O157 STEC as *per se* adulterants in non-intact beef:  "FSIS has determined that raw, non-intact beef products that are contaminated with these STEC O26, O45, O103, O111, O121, and O145, are adulterated within the meaning of 21 U.S.C. 601(m)(1). Raw, non-intact beef products that are contaminated with these pathogens are also unhealthful and unwholesome (under 21 U.S.C. 601(m)(3)). FSIS also considers adulterated intact cuts that are contaminated with these serogroups if they are to be further processed into raw, non-intact products before being distributed for consumption." Shiga Toxin-Producing *Escherichia coli* in Certain Raw Beef Products, 76 Fed. Reg. 58157 (to be codified at 9 C.F.R. pts. 416-417, 430).

16.     In light of the federal regulations and public health risk posed by ground beef contaminated with STEC, responsible producers of non-intact beef products, including ground beef implement rigorous food safety programs with antimicrobial interventions, which may include acid washes, environmental testing, and product testing.

## The Colorado Premium Foods Outbreak

17.     In March of 2019, public health officials in Kentucky and Georgia became aware of an increase in STEC *E. coli* infections, particularly among children and teenagers with extensive exposure to fast food.

18.     On March 28, 2019, the Centers for Disease Control and Prevention (CDC) began a multistate outbreak investigation related to these illnesses.

3

19.     Further investigation revealed that the ill individuals had been sickened with *E. coli* O103.

20.     On April 12, 2019, ground beef was identified as the common source of the illnesses.

21.     On April 23, 2019, FSIS issued a recall notice for ground beef pucks produced by Colorado Premium Foods for *E. coli* O103 contamination.

22.     The recalled raw ground beef items were produced on March 26, March 29, April 2, April 5, April 10, and April 12, 2019. This recall is expected to expand.

23.     According to the CDC, as of April 23, 2019, at least 156 individuals had become ill with *E. coli* O103 across 10 states.

24.     Upon information and belief, this outbreak, including Plaintiff's illness, was caused by ground beef products produced and sold by Colorado Premium Foods.

25.     Colorado Premium Foods holds itself out as a safe producer of meat products, claiming that it performs a 100% test and hold procedure for all of its ground beef products. For example, a promotional brochure available on its website proclaims:



Accessed April 24, 2019 from https://coloradopremium.com/brochure.

26.     Despite the claims made by Colorado Premium Foods to its purchasers, the ground beef it manufactured and sold was contaminated with *E. coli* O103, a deadly pathogen.

### Plaintiff's Illness

27.     In late February 2019, Plaintiff Melissa Carmicle consumed ground beef.

28.     By early March, Ms. Carmicle began feeling very ill with diarrhea and abdominal pain.

5

29.     On March 2, 2019, Ms. Carmicle presented to the emergency room at St. Joseph's Hospital in London, Kentucky. Despite the severity of her symptoms, she was sent home.

30.     The next morning, Ms. Carmicle returned to St. Joseph's London because her diarrhea had become bloody—the hallmark of a STEC infection.

31.     A stool sample taken at the hospital was positive for Shiga toxin-producing *E. coli*.

32.     Ms. Carmicle was admitted to the hospital in London, and later that evening, she was transferred to St. Joseph Hospital's Main campus in Lexington, Kentucky.

33.     Because her kidneys began to fail, Ms. Carmicle was sent to the intensive care unit (ICU), where she remained for another three days.

34.     Finally, Ms. Carmicle was discharged from the hospital, but her problems were far from over.

35.     Ms. Carmicle began experiencing seizures. Her condition was so acute that she was transported by helicopter back to St. Joseph Main in Lexington, and again returned to the ICU for another three-day stay. After becoming well enough to leave the ICU, Ms. Carmicle spent another week in the hospital.

36.     Ms. Carmicle continues to require follow up care, including treatment by a nephrologist.

37.     As a result of her illness, Plaintiff incurred past and future medical expenses and physical and mental pain and suffering. As a result of her injuries as described above, Ms. Carmicle has incurred reasonable and necessary medical expenses, and will in the future incur reasonable and necessary medical expenses.

38.     As a result of her injuries, as described above, Ms. Carmicle has been unable to perform her work as a homemaker.

39.     As a result of her injuries, as described above, Ms. Carmicle has suffered great pain of body and anguish of mind, and will in the future suffer great pain of body and anguish of mind.

## COUNT I

### Strict Product Liability – KRS 411.300 et *seq.*

40.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

41.     Defendant Colorado Premium Foods manufactured, distributed, marketed, and sold the contaminated ground beef that injured Plaintiff and caused her to become infected with *E. coli* O103.

42.     Defendant Colorado Premium Foods is in the business of manufacturing and selling ground beef products to institutions and that serve food to the public, like restaurants.

43.     Defendant Colorado Premium Foods intended that its raw ground beef products would be further processed and cooked prior to reaching end consumers.

44.     Nonetheless, ground beef that is contaminated with *E. coli* O103 is unfit and unreasonably dangerous for its intended use of human consumption, even if intended to be fully cooked.

45.     The ground beef ultimately purchased and consumed by Plaintiff was contaminated with STEC when it left Defendant Colorado Premium Foods's control.

46.     The contaminated ground beef reached Plaintiff without substantial change in the condition in which it was sold by Defendant, that is contaminated with STEC.

47.    An ordinarily prudent manufacturer and seller of ground beef products, being fully aware of the risks of STEC, would not place an *E. coli* O103-contaminated beef product on the market.

48.    Plaintiff's consumption of Defendant Colorado Premium Foods's contaminated ground beef was a direct and proximate cause of her infection and her subsequent injuries.

49.    Defendant Colorado Premium Foods is strictly liable to Plaintiff for the harms caused by its manufacture and sale of unreasonably dangerous and defective ground beef. Plaintiff has suffered and will continue to suffer significant physical and emotional injury, including medical expenses, pain and suffering, and other damages to be proved at trial.

## COUNT II

50.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

51.    Defendant Colorado Premium Foods manufactured, marketed, distributed, and sold food products to Plaintiff that were contaminated with *E. coli* O103, a potentially life threatening pathogen.  As a result, the food sold to Plaintiff was unreasonably dangerous and unfit for human consumption.

52.    Defendant Colorado Premium Foods owed a duty to Plaintiff to exercise reasonable care in order to minimize the risk of injury to others when manufacturing and selling its food products.

53.    Specifically, Defendant Colorado Premium Foods owed a duty to end consumers of its beef products, as well as to all persons foreseeably put at risk of secondary transmission of the disease, to manufacture and sell food that was safe to eat, was not adulterated with deadly pathogenic bacteria, and that was not in violation of applicable food safety regulations.

54.     Defendant also owed a duty to all of the end consumers of its products, as well as to all persons foreseeably put at risk of secondary transmission of the disease, to produce ground beef products that were not contaminated with STEC.

55.     Defendant breached this duty through one or more of the following acts or omissions:

a.   Failing to adequately maintain or monitor the sanitary conditions of its products, premises, equipment and employees;

b.   Failing to properly operate its facilities and equipment in a safe, clean, and sanitary manner;

c.   Failing to apply its food safety policies and procedures to ensure the safety and sanitary conditions of its food products, premises, and employees;

d.   Failing to apply food safety policies and procedures that met industry standards for the safe and sanitary production of food products, and the safety and sanitary condition of its premises and employees;

e.   Failing to prevent the transmission of STEC to consumers of its ground beef products;

f.   Failing to properly train its employees and agents how to prevent the transmission of STEC on its premises, from its facility or  equipment, or in its food products;

g.   Failing to properly supervise its employees and agents to prevent the transmission of STEC on its premises, from its facility or  equipment, or in its food products;

h.   Failing to properly select and monitor its beef suppliers; and

       i.    Failing to test its ground beef products for microbial pathogens, like STEC.

56.    A prudent ground beef seller by the exercise of ordinary care should have discovered and foreseen the problems with producing and selling *E. coli*-contaminated beef products.

57.    As a direct and proximate result of Defendant Colorado Premium Foods' conduct, Plaintiff sustained the injuries and damages set forth above.

## COUNT III

58.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

59.    Defendant Colorado Premium Foods owed a duty to consumers, including Plaintiff, to abide by all applicable laws regarding food safety, and to use supplies and raw materials that complied with all applicable federal, state, and local food laws, ordinances, and regulations.

60.    Defendant Colorado Premium Foods had a duty to comply with the Federal Meat Inspection Act (FMIA), 21 U.S.C. § 601, and all of the rules, regulations, and policies promulgated pursuant to it. Defendant Colorado Premium Foods did not comply with these duties in the manufacturer of meat adulterated with *E. coli* O103.

61.    Under the fact that Defendant Colorado Premium Foods failed to comply with federal legislative and/or administrative regulations is evidence that the Defendant breached its duty of reasonable care and is negligence *per se*.

62.    Plaintiff was in the class of people intended to be protected by applicable food safety laws. Failure by Defendant Colorado Premium Foods to comply with these laws and regulations was a direct and proximate cause of Plaintiff's injuries.

WHEREFORE, Plaintiff Melissa Carmicle demands judgment against the Defendant for a sum in excess of $75,000.00, for pre-judgment interest, post-judgment interest, costs, trial by jury and for any and all other proper relief to which he may appear properly entitled.

Respectfully submitted,


BY:   /s/ Albert B. McQueen, Jr.
Albert B. McQueen, Jr.
Wilson & McQueen, PLLC
309 North Broadway
Lexington, KY 40508
Phone: (859) 253-2373
Fax: (859) 253-2360
abmcqueen@wmkylaw.com

and

Ryan Osterholm (PHV forthcoming)
Brendan Flaherty (PHV forthcoming)
Pritzker Hageman, P.A.
45 South Seventh Street, Suite 2950
Minneapolis, MN 55402-1652
Phone: (612) 338-0202
ryan@pritzkerlaw.com
brendan@pritzkerlaw.com